UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER BAKER,<br><br>    Defendant. | CASE NO. 1:16-cv-01540-DAD-MJS(PC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**<br><br>(ECF NO. 30)<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff is a federal prisoner proceeding pro se in a civil rights action pursuant to <u>Bivens vs. Six Unknown Agents</u>, 403 U.S. 388 (1971). The action proceeds against Defendant Baker on Plaintiff's Eighth Amendment excessive force claim and First Amendment retaliation claim. (ECF Nos. 1, 12, 23.)

Before the Court is Defendant's motion for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies before filing his retaliation claim.[1] (ECF No. 30.) Plaintiff opposes the motion. (ECF No. 31.) Defendant replied. (ECF No. 34.) The matter is submitted. Local Rule 230(*l*).

For the reasons set forth below, the undersigned will recommend that Defendant's motion be denied.

---

[1] Defendant does not here seek summary judgment on Plaintiff's excessive force claim. (ECF No. 30.)

1

## I. Plaintiff's Allegations

Plaintiff's allegations may be summarized as follows.

In 2014, Plaintiff filed grievances regarding various non-party correctional staff. At some point, Officer Baker told Plaintiff it probably was not a good idea to be filing grievances. In September 2014, Plaintiff reported this perceived threat to correctional staff Copenhaver. Copenhaver told Plaintiff to talk with correctional staff Snyder. Snyder responded that Plaintiff was paranoid. Neither Copenhaver nor Snyder investigated Plaintiff's concerns or took any action. Defendant Baker was on probation at this time.

On October 13, 2014, an incident occurred between Plaintiff and Defendant Baker in the course of which Plaintiff agreed to submit to handcuffs. However, Baker planted Plaintiff's arm on the ground and twisted it, separating the muscle from the bone and causing Plaintiff a permanent loss of strength. Plaintiff stated, "You broke my arm, you're hurting me." Baker responded, "That will teach you about filing grievances." A Correctional officer Borja was present; he did not intervene, but he did report the incident to Copenhaver and Snyder.[2]

As a result of the incident, Plaintiff was hospitalized until October 20, 2014. Defendant Baker was terminated in November 2014.

## II. Factual Background[3]

### A. Administrative Remedy Request No. 802835

On November 19, 2014, Plaintiff submitted Administrative Remedy Request No. 802835-F1[4] to BP-9, where it was reviewed by the Warden as the first level of review. Vickers Decl. ¶ 7, Ex. 2, 3 (ECF No. 30-3 at 16, 24.) Administrative Remedy Request 802835-F1 stated:

---

[2] Plaintiff originally brought claims against Copenhaver, Snyder and Borja as well, but those claims were dismissed. (See ECF Nos.12, 23.)
[3] All facts reflected here are undisputed unless otherwise noted.
[4] "Administrative Remedy Request" is, in essence, the form of complaint or appeal. Suffixes added to the claim number indicate the various levels of review. F1 indicates submission to the first level of review, R1 indicates the second level of review, and A1 indicates the third and final level of review. See Vickers Decl. ¶ 4. (ECF No. 30-3.)

> I want action taken against Ofc. Baker &/or Borja for using excessive force. My arm muscle is tore because I dropped a piece of paper on the floor. These Ofc's should be fired. Your staff cannot assault me because I have "a piece of paper" in my hand. This was an Eighth Amendment violation. Staff is prohibited from assaulting inmates under any circumstances. Ofc. Borja retaliated against me by writing me up, for 115 destroying evidence. I cann [sic] destroy evidence by throwing it on the ground "if its a piece of paper!" I complained that I was being assaulted, and received a write-up to stop me and/or cover-up for the use of excessive force. Take action & dismiss the write-up. And turn over investigation against Ofc. Baker to federal law enforcement. There can be no debate I was assaulted & excessive force used.

(ECF No. 30-3 at 24.)

On December 30, 2014, the Warden responded, stating that Plaintiff's allegations of staff misconduct would be reviewed, and if necessary, referred to the appropriate department for investigation. (Id. at 25.) However, because the allegations involved a personnel matter subject to the Privacy Act, no further information would be disclosed to Plaintiff. (Id.)

On January 6, 2015, Plaintiff submitted Administrative Remedy Request No. 802835-R1 to BP-10 at the Western Regional Office, the next level of review. Vickers Decl. Ex. 2, 3 (ECF No. 30-3 at 18, 26.) In this request, Plaintiff asked for an investigation, for the officers involved to be fired, for disciplinary action to be taken, and for compensation for himself. Vickers Decl. Ex. 3 (ECF No. 30-3 at 26.) The request also stated "I received a write-up in Retaliation [sic] for complaining about my mistreatment. Of[ficer] Baker was fired for this?" (Id.) Plaintiff also stated, "I committed no prohibited act, but to cover-up misconduct I got an incident report." On February 10, 2015, the Regional Director responded to the grievance stating that the allegations were being investigated, but that further information was protected by the Privacy Act. Plaintiff was advised that he could not receive compensation through the administrative appeal process and was informed of alternative procedures for seeking such relief. (Id. at 27.)

Plaintiff eventually submitted Administrative Remedy Request No. 802835-A1 to the Central Office, BP-11, the final level of review. Vickers Decl. ¶ 7, Ex. 2 (ECF No. 30-3 at 20); (ECF No. 31. at 9.) The appeal was received by the Central Office on April 2, 2015, and was rejected on May 18, 2015 because Plaintiff did not provide a copy, a receipt or a verified photocopy of his original appeal. Plaintiff had fifteen days to correct this error. 28 C.F.R. § 542.17(b). Defendants contend that Plaintiff did not resubmit the appeal within fifteen days. Vickers Decl. ¶ 7, Ex. 2 (ECF No. 30-3 at 20); Supplemental Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J. (ECF No. 34-3) ¶ 7.

In his opposition, Plaintiff states, "I re-submitted a BP-11 to Washington DC in April 2015." (ECF No. 31. at 12.) It is not clear whether this statement is intended to indicate that he did re-submit the appeal after it was rejected or merely to point out that he did, in fact, submit a BP-11 to the third and final level of review. In any event, BOP records reflect that the appeal was not rejected until May 2015. Plaintiff does not contend that he resubmitted the appeal with appropriate documentation after that date.

### B. Administrative Remedy Request No. 801695

On November 18, 2014, Plaintiff submitted Administrative Remedy Request No. 801695, characterized by BOP as concerning "staff misconduct in corridor", to the first level of review. See Vickers Decl. Ex. 2 (ECF No. 30-3 at 16.)[5] However, there is no further information in the record about this appeal beyond the BOP printout indicating it was closed on December 30, 2014, as "XPL." (Id.) The reason code is unexplained, but it is the same reason code used on Appeal No. 802835-F1, which was referred for a confidential personnel inquiry. (Id.),

Plaintiff states that, in January 2016, he sent a letter inquiring as to the status of this appeal (against Officer Baker), but received no response before filing this lawsuit. (ECF No. 31 at 12.)

---

[5] Defendants' print out of Plaintiff's Administrative Remedy Requests indicate that another request, Administrative Remedy Request No. 801694, also concerned "staff misconduct in corridor", but it was deemed a duplicate of 801695. Remedy Request No. 801694 was closed on February 24, 2015. Neither the request nor any determination on it are before the Court.. See Vickers Decl. Ex. 2 (ECF No. 30-3 at 15.)

4

## C. Office of Internal Affairs Investigations

At least some of the allegations contained in Plaintiff's Administrative Remedy Request No. 802835 were referred to the Office of Internal Affairs ("OIA") in January of 2015 and an investigation was conducted. See Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J. (ECF No. 30-6) ¶ 8; Supplemental Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J. (ECF No. 34-3) ¶¶ 8-9. As part of the investigation Plaintiff was interviewed by Special Investigative Services ("SIS") Lieutenant Glen Cobb in February 2015.[6] See Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J. (ECF No. 30-6) ¶ 8; Supplemental Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J. (ECF No. 34-3) ¶ 9; (ECF No. 31. at 3, 7.)

Lieutenant Cobb denies that Plaintiff said during this interview that Defendant Baker had threatened him or had any kind of retaliatory animus towards Plaintiff. See Supplemental Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J. (ECF No. 34-3) ¶¶ 9-11. Plaintiff disputes this. He asserts he there told Cobb that, according to Baker, the October 2014 incident was in retaliation for Plaintiff's grievances. (ECF No. 31. at 7.)

## III. Legal Standards

### A. Summary Judgment Standards

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. Anderson, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a

---

[6] Plaintiff indicates that this interview took place in March 2016. Plaintiff Reply (ECF No. 31. at 3, 7.)

triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Devereaux, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to judgment. See Celotex, 477 U.S. at 323.

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies

effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's pleading is signed under penalty of perjury and the facts therein that are based on personal knowledge are evidence for purposes of evaluating Defendant's motion for summary judgment.

**B.    Federal Bureau of Prisons Exhaustion Rules**

The Federal Bureau of Prisons ("BOP") has established an administrative remedy procedure through which an inmate can seek review of any complaint regarding any aspect of his imprisonment including security concerns. See 28 C.F.R. § 541.10; Nunez v. Duncan, 591 F.3d 1217, 1219 (9th Cir. 2010). As a first step, the prisoner ordinarily must seek to resolve the issue informally with prison staff using a BP-8 form. 28 C.F.R. §

542.13(a). If the informal complaint does not resolve the dispute, the prisoner can then file a formal administrative remedy request at the institution of confinement using a BP-9 form. 28 C.F.R. § 542.14(a). The BP-9 must be submitted within 20 calendar days following the date on which the basis of the grievance occurred, except where the prisoner demonstrates a valid reason for delay. 28 C.F.R. §§ 542.14(a), (b).

If the BP-9 request is denied by the warden, as a third step the prisoner may file an appeal with the Regional Director using a BP-10 form. 28 C.F.R. § 542.15(a); Nunez, 591 F.3d at 1219. The BP-10 must be submitted within 20 calendar days of the date the warden responded to the BP-9, with the exception again where there are valid reasons for delay. Id.

As a last step, where the prisoner is not satisfied with the Regional Director's response, he or she may submit an appeal to the BOP General Counsel using a BP-11 form. 28 C.F.R. § 542.15(a); Nunez, 591 F.3d at 1219-20. The BP-11 must be submitted within 30 calendar days of the date of the Regional Director's response to the BP-10, with the same exception for valid reasons for delay. 28 C.F.R. § 542.15(a); Nunez, 591 F.3d at 1220.

### C. Exhaustion under Prison Litigation Reform Act ("PLRA")

Under the PLRA, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a)

requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90. To properly exhaust, an inmate must comply with the grievance procedures rule and deadlines of the institution where he is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007).

Under the PLRA, a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (quoting Griffin, 557 F.3d at 1120). The grievance "need not include legal terminology or legal theories," because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). The grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Jones, 549 U.S. at 219 (citations omitted). The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp, 623 F.3d at 824 ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.").

The Ninth Circuit has recognized that the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." See Sapp, 623 F.3d at 824; Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010). An inmate may be excused from exhaustion if he establishes (1) that he actually filed a grievance that, if pursued through all levels of administrative appeals, would exhaust the claim, and (2) that prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations. Sapp, 623 F.3d at 823-24.

Prison officials may not render the appeals process unavailable through error or misconduct and then take advantage of the prisoner's failure to complete the process. See Sapp, 623 F.3d at 823 (improper screening and/or processing of an inmate's

administrative grievance "renders administrative remedies 'effectively unavailable'") (internal citations omitted). "[A]ffirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." Albino, 697 F.3d at 1034. See also McBride v. Lopez, 807 F.3d 982, 984 (9th Cir. 2015) (finding that a threat can render an administrative remedy unavailable).

Exhaustion of administrative remedies may be deemed complete, despite the inmate's failure to comply with a procedural rule, if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); e.g., Id. at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

**IV. Parties Arguments**

Defendants move for summary judgment on the ground that Plaintiff did not exhaust his retaliation claim against Defendant Baker. Defendants argue that Administrative Remedy Request No. 802835 focused on a claim of excessive force without even mentioning the possibility that the force was used in retaliation. As such, it did not put the prison on notice of any claim of retaliation by Baker or provide the prison an opportunity to address such a claim.

Plaintiff's argument is broad and, perhaps as a result, unclear. He states that he repeatedly informed the institution of his complaints about Officer Baker's retaliatory animus in the course of informal communications, administrative grievances, and interviews prompted by his grievances and resulting investigations. He does not expressly state that he filed a written grievance against Baker for retaliation or that he pursued an administrative grievance about Baker through all levels of review. He does not identify any grievance beyond those discussed above. He does suggest that threats from correctional staff dissuaded him from pursuing administrative grievances.

Defendants respond by noting the absence of any evidence of the existence of a written grievance alleging retaliation by Officer Baker. Plaintiff's claim that he was prevented from filing grievances by threats and fear is contradicted by Plaintiff's grievance filing history and his claim that he raised the retaliation issue multiple times in interviews.

**V.     Analysis**

    **A.     Administrative Remedy Request No. 802835**

Administrative Remedy Request No. 802835 does not allege retaliation by Defendant Baker. It does not allege Baker had or acted out of a retaliatory animus towards Plaintiff. It does not identify any retaliatory threats or other retaliatory animus occurring before the October 13, 2014 incident. Plaintiff's appeals attribute the write up by Borja to a desire by Borja to retaliate against him, but make no such claim against Baker.

Specifically, Plaintiff's first appeal stated, "Of[ficer] Borja retaliated against me by writing me up"; and "I received a write-up to stop me and/or cover-up for the use of excessive force." Vickers Decl. Ex. 2 (ECF No. 30-3 at 24). Plaintiff's second appeal stated, "I received a write-up in retaliation for complaining about my mistreatment Of[ficer] Baker was fired for this?" (Id. at 26.) These statements indicate that Plaintiff believed he received a write-up as retaliation for complaining about Officer Baker's excessive force on October13, 2014 incident, not that the October 2014 incident itself was retaliation for any of Plaintiff's prior conduct.

In order to satisfy a prisoner's requirement to exhaust remedies a grievance must alert "the prison to the nature of the wrong for which redress is sought." See Griffin, 557 F.3d at 1120. The inmate need not include specific legal theories, but must as least "alert the prison to a problem and facilitate its resolution." Id. Here, Plaintiff's appeals would put a reasonable investigating prison official on notice that Plaintiff believed he had been written up in retaliation for complaining of an assault. Nothing therein suggests Plaintiff was complaining that he had been assaulted by Defendant Baker in retaliation for filing

grievances. The grievances in the record would not put officials on notice that Plaintiff believed he had been assaulted by Defendant Baker because of prior protected First Amendment activity. These appeals did not suffice to exhaust this claim.

### B. OIA and Other Verbal Interviews

Plaintiff argues that his OIA interviews with SLS officers and other correctional staff in which he told the interviewers that Bakers' use of force was retaliatory should constitute exhaustion. (ECF No. 31.) These interviews, however, do not comply with the BOP's administrative grievance process. See 28 C.F.R. § 542.10 et seq. As noted, supra, compliance with section 1997e(a) is mandatory and strictly construed. Woodford, 548 U.S. at 85-86; Sapp, 623 F.3d at 818. Plaintiff merely informing the BOP of the problem is not compliance with the strict exhaustion requirements.

### C. Administrative Remedy Request 801695

Plaintiff states, "In January of 2016 I sent a letter to the Administrative Appeal coordinator asking for the status of my grievance against Of[ficer] Baker. Remedy #801695." (ECF No. 31 at 12.) Plaintiff provides no further information regarding this appeal. He does not describe its content, produce a copy, or provide any evidence that it concerned the October 2014 incident or was exhausted through the final level of review. Plaintiff further states, "I did not hear back from the BOP before filing this lawsuit." (Id.)

Defendant does not address this appeal beyond the BOP printout of Plaintiff's administrative remedies from October 2014 to October 2016 which indicates that it concerned "staff misconduct in corridor" and was closed for an undefined reason. Vickers Decl. Ex. 2 (ECF No. 30-3 at 16.)

The lack of clarity regarding this appeal and how it was processed militates against the defense and their burden on summary judgment to demonstrate that Administrative Remedy Request 801695 did not exhaust Plaintiff's remedies on his retaliation claim.

It is the Defendants' burden to prove that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at

1172. They must prove on summary judgment that no reasonable trier of fact could find other than for them. <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007). Here, Plaintiff provides a sworn declaration stating that he submitted an administrative remedy addressing Baker's conduct, and suggesting that it may have addressed his retaliation claim. Defendants have not disputed this claim; indeed, they have ignored it. Even though Plaintiff states that he did not receive a response from this grievance, without knowing the content of the appeal or any replies, this Court cannot determine that Defendants are entitled to judgment. <u>See</u> <u>Rupe v. Beard</u>, No. CV-08-2454-EFS (PC), 2013 U.S. Dist. LEXIS 80041, at *42 (E.D. Cal. June 3, 2013) (noting that the Ninth Circuit has not determined that an untimely response excuses a prisoner's failure to exhaust, but it has left open the possibility that unjustified delay in responding to a grievance may demonstrate that no administrative process is in fact available.)

Therefore, construing all facts in favor of the nonmoving party, the evidence indicates that Defendants have not met their burden of demonstrating that Plaintiff failed to exhaust all available administrative remedies in relation to his retaliation claim against Defendant Baker and the motion should be denied.

**VI.    Rule 56(d) Request**

Plaintiff asks the Court to hold the motion for summary judgment in abeyance to allow him to pursue discovery to support his claim that he exhausted administrative remedies. (ECF No. 31 at 5.) He specifies various records he has requested that he believes will support his claim that he informed officers during interviews that the incident at issue here was retaliatory. (<u>Id.</u> at 5-6.)

"Rule 56(d) 'provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence.'" <u>Atigeo LLC v. Offshore Ltd.</u>, 2014 WL 1494062, at *3 (W.D. Wash. Apr. 16, 2014) (quoting <u>United States v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1000 (9th Cir. 2002)). Federal Rule of Civil Procedure 56(d) permits the Court to delay consideration of a motion for summary judgment to allow parties to obtain discovery to oppose the motion. When a motion for

summary judgment is filed "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case," a Rule 56(d) motion should be freely granted. Burlington N. Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck Reservation, 323 F.3d 767, 773 (9th Cir. 2003).

A party asserting that discovery is necessary to oppose a motion for summary judgment "shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary." Local Rule 260(b). However, where "no discovery whatsoever has taken place, the party making a Rule 56[(d)] motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." Burlington N., 323 F.3d at 774. "The Courts which have denied a Rule 56[(d)] application for lack of sufficient showing to support further discovery appear to have done so where it was clear that the evidence sought was almost certainly nonexistent or was the object of pure speculation." VISA Int'l. Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986) (citation omitted).

Here, the motion for summary judgment was filed three months after discovery opened. (See ECF No. 27.) However, discovery here remains in its initial stages, and Plaintiff has not yet received responses to his discovery requests. Generally, a Rule 56(d) motion will be granted in such circumstances. Here however the Court concludes that the motion for summary judgment should be denied even without additional discovery and evidence from Plaintiff. Thus, because additional discovery is not required for Plaintiff to defeat summary judgment, the Rule 56(d) request should also be denied.

**VI.     Conclusion**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment for failure to exhaust administrative remedies in relation to the First Amendment retaliation claim against Defendant Baker be DENIED.

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).

Within fourteen (14) days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: February 27, 2018        /s/ *Michael J. Seng*
                                UNITED STATES MAGISTRATE JUDGE