UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER BAKER,<br><br>    Defendant. | Case No. 1:16-cv-01540-DAD-JDP<br><br>FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br><br>OBJECTIONS, IF ANY, DUE IN 14 DAYS<br><br>ECF No. 30 |

Plaintiff is a federal prisoner proceeding without counsel in this civil rights action brought under *Bivens vs. Six Unknown Agents*, 403 U.S. 388 (1971). The action proceeds against defendant Baker on plaintiff's Eighth Amendment excessive force claim and First Amendment retaliation claim. ECF No. 1; ECF No. 12; ECF No. 23.

Before the court is defendant's motion for summary judgment for plaintiff's failure to exhaust his administrative remedies before filing his retaliation claim.[1] ECF No. 30. Plaintiff filed an opposition, ECF No. 31, and defendant filed a reply, ECF No. 34. The court will also consider defendant's response to the original findings and recommendations, which have been vacated. ECF No. 39; ECF No. 38; ECF No. 54. The motion was submitted on the record

---

[1] Defendant does not here seek summary adjudication of plaintiff's excessive force claim. ECF No. 30.

1

1 without oral argument under Local Rule 230(*l*).² For the reasons set forth below, we recommend that the court grant defendant's motion.

## I. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir.

---
² As required by *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998), plaintiff was provided with notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies via an attachment to defendants' motion for summary judgment. ECF No. 30.

2

2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B. Exhaustion Requirement**

Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement "applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Unexhausted claims require dismissal. *See Jones v. Bock*, 549 U.S. 199, 211 (2007).

A prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. *Id.* at 218. When a prison's grievance procedures do not specify the requisite level of detail, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted). "The grievance 'need not include legal terminology or legal theories,' because '[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.'" *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Griffin*, 557 F.3d at 1120).

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 1856. The Supreme Court has explained when an administrative procedure is unavailable:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use . . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation . . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 1859-60 (citations omitted); *see also Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies.").

If the court concludes that plaintiff has failed to exhaust available remedies, the proper

4

remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a).  *See Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

**C. Federal Bureau of Prisons Exhaustion Rules**

The Federal Bureau of Prisons ("BOP") has established an administrative remedy procedure through which an inmate can seek review of any complaint regarding any aspect of his imprisonment.  *See* 28 C.F.R. § 541.10; *Nunez v. Duncan*, 591 F.3d 1217, 1219 (9th Cir. 2010).  As a first step, the prisoner must seek to resolve the issue informally with prison staff using a BP-8 form.  28 C.F.R. § 542.13(a).  If the informal complaint does not resolve the dispute, the prisoner can then file a formal administrative remedy request at the institution of confinement using a BP-9 form.  28 C.F.R. § 542.14(a).  The BP-9 must be submitted within twenty calendar days following the date on which the basis of the grievance occurred, except when the prisoner demonstrates a valid reason for delay.  28 C.F.R. §§ 542.14(a), (b).

If the BP-9 request is denied by the warden, the prisoner may file an appeal with the Regional Director using a BP-10 form.  28 C.F.R. § 542.15(a); *Nunez*, 591 F.3d at 1219.  The BP-10 must be submitted within twenty calendar days of the date the warden responded to the BP-9, except when the prisoner demonstrates a valid reason for delay.  *Id.*

As a last step, if the prisoner is not satisfied with the Regional Director's response, he or she may submit an appeal to the BOP General Counsel using a BP-11 form.  28 C.F.R. § 542.15(a); *Nunez*, 591 F.3d at 1219-20.  The BP-11 must be submitted within thirty calendar days of the date of the Regional Director's response to the BP-10, unless the prisoner demonstrates a valid reason for delay.  28 C.F.R. § 542.15(a); *Nunez*, 591 F.3d at 1220.

**II. SUMMARY JUDGMENT RECORD**

To decide a motion for summary judgment, a district court may consider materials listed in Rule 56(c).  Those materials include depositions, documents, electronically-stored information, affidavits or declarations, stipulations, party admissions, interrogatory answers, "or other materials."  Fed. R. Civ. P. 56(c).  A party may object that an opponent's evidence "cannot be presented in a form that would be admissible" at trial, *see* Fed. R. Civ. P. 56(c)(2), and the court ordinarily rules on evidentiary objections before deciding a summary judgment

motion to determine what materials the court may consider. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010); *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 845 (9th Cir. 2004). Here, defendants present plaintiff's complaint; the declaration of Jennifer Vickers; the declaration of Christopher Bakerin; the declaration of Enrique Borja; the declaration of Glen Cobb; and the declaration of Christopher Liwag. ECF No. 1; ECF No. 30-3; ECF No. 30-4; ECF No. 30-5; ECF No. 30-6; ECF No. 30-7. Plaintiff presents his declaration. ECF No. 31. No party disputes these materials' admissibility.

**A. The Complaint**

The allegations in plaintiff's complaint are summarized as follows: In 2014, plaintiff filed grievances regarding various non-party correctional staff, and Officer Baker subsequently told plaintiff that it was not a good idea to file such grievances. In September 2014, plaintiff reported this threat to Warden Copenhaver. Copenhaver told plaintiff to talk with Assistant Warden Snyder. When plaintiff informed Snyder of the threat, Snyder responded that plaintiff was being paranoid. Neither Copenhaver nor Snyder investigated or acted upon plaintiff's concerns. Defendant Baker was on probation at this time.[3]

On October 13, 2014, plaintiff agreed to submit to handcuffs.[4] Once plaintiff was in handcuffs, Baker "took [plaintiff's] arm and planted it on the ground and deliberately and maliciously twisted [his] bicep muscle until it was torn from the bone resulting in [his] permanent loss of strength." ECF No. 1 at 3. Plaintiff stated, "You broke my arm, you're hurting me." *Id.* Baker responded, "That will teach you about filing grievances." *Id.* Correctional officer Borja was present; he did not intervene, but he did report the incident to Copenhaver and Snyder.[5] As a result of the incident, plaintiff was hospitalized from October 13, 2014 until October 20, 2014. Defendant Baker "was terminated as a result of his use of excessive force against the plaintiff in October-November 2014." *Id.* at 4-5.

---

[3] Plaintiff provides no further detail regarding Baker's alleged probation.
[4] Plaintiff does not explain the circumstances that led to him being handcuffed.
[5] Plaintiff originally brought claims against Copenhaver, Snyder and Borja as well, but those claims were dismissed. *See* ECF No. 12; ECF No. 23.

6

### B. Grievance No. 802835

On November 19, 2014, plaintiff submitted a BP-9 grievance—no. 802835-F1[6]—which was reviewed by the warden at the first level of review. Vickers Decl. ¶ 7, Ex. 2, 3 ECF No. 30-3 at 16, 24. Grievance no. 802835-F1 stated:

> I want action taken against Ofc. Baker &/or Borja for using excessive force. My arm muscle is tore because I dropped a piece of paper on the floor. These Ofc's should be fired. Your staff cannot assault me because I have "a piece of paper" in my hand. This was an Eighth Amendment violation. Staff is prohibited from assaulting inmates under any circumstances. Ofc. Borja retaliated against me by writing me up, for 115 destroying evidence. I [cannot] destroy evidence by throwing it on the ground "if its a piece of paper!" I complained that I was being assaulted, and received a write-up to stop me and/or cover-up for the use of excessive force. Take action & dismiss the write-up. And turn over investigation against Ofc. Baker to federal law enforcement. There can be no debate I was assaulted & excessive force used.

ECF No. 30-3 at 24.

On December 30, 2014, the warden responded, stating that plaintiff's allegations of staff misconduct would be reviewed, and if necessary, referred to the appropriate department for investigation. *Id.* at 25. The warden informed plaintiff that no further information would be disclosed to plaintiff because the allegations involved a personnel matter subject to the Privacy Act. *Id.*

On January 6, 2015, plaintiff submitted a BP-10 grievance—no. 802835-R1—to the Western Regional Office, the next level of review. Vickers Decl. Exs. 2, 3, ECF No. 30-3 at 18, 26. In this request, plaintiff asked for an investigation, for the officers involved to be fired, for disciplinary action to be taken, and for compensation for himself. Vickers Decl. Ex. 3, ECF No. 30-3 at 26. Plaintiff also states that he "received a write-up in [r]etaliation [sic] for complaining about my mistreatment," and asks whether Officer Baker was fired for injuring him. *Id.* On February 10, 2015, the Regional Director responded to the grievance, stating that the allegations were being investigated, but that further information was protected by the Privacy Act.

---

[6] Suffixes added to the administrative grievance number indicate the pertinent levels of review. F1 indicates submission to the first level of review, R1 indicates the second level of review, and A1 indicates the third and final level of review. *See* Vickers Decl. ¶ 4, ECF No. 30-3.

*Id.* at 27. The Regional Director advised plaintiff that he could not receive compensation through the administrative appeal process and informed him of alternative procedures for seeking such relief. *Id.*

Plaintiff then submitted a BP-11 grievance—no. 802835-A—to the Central Office, the final level of review. Vickers Decl. ¶ 7, Ex. 2 ECF No. 30-3 at 20; ECF No. 31. at 9. The Central Office received the grievance on April 2, 2015 and rejected it on May 18, 2015 because plaintiff did not provide a copy, a receipt, or a verified photocopy of his original grievance. Vickers Decl. ¶ 7, Ex. 2 ECF No. 30-3 at 20. Defendants contend that plaintiff had fifteen days to correct this error per 28 C.F.R. § 542.17(b), but he did not resubmit the grievance. Vickers Decl. ¶ 7, Ex. 2 ECF No. 30-3 at 20; Supplemental Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J., ECF No. 34-3 ¶ 7. In his opposition, plaintiff states, "I re-submitted a BP-11 to Washington DC in April 2015."[7] ECF No. 31. at 12.

### C. Grievance No. 801695

On November 18, 2014, plaintiff submitted grievance no. 801695, characterized by BOP as concerning "staff misconduct in corridor," to the first level of review.[8] *See* Vickers Decl. Ex. 2, ECF No. 30-3 at 16. Though plaintiff alleges that this grievance concerned Officer Baker, ECF No. 31 at 12, defendants produced a copy of the grievance, which shows that it concerned an alleged physical assault by Lt. Hayes in the main corridor of United States Penitentiary, Atwater, on September 14, 2014. Vickers Second Supp. Decl. Exh. 1, ECF No. 39-2 at 5. The grievance does not mention Officer Baker.

### D. Office of Internal Affairs Investigations

Grievance no. 802835 was referred to the Office of Internal Affairs ("OIA") in January 2015, and the OIA investigated. *See* Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J., ECF No. 30-6 ¶ 8; Supplemental Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J., ECF No. 34-3 ¶¶ 8-9.

---

[7] The court does not know whether plaintiff intends to convey that he re-submitted the grievance after it was rejected or submitted a BP-11 in the first instance to the third and final level of review.

[8] Defendant's evidence indicates that another request—no. 801694—also concerned "staff misconduct in corridor," but CDCR deemed it to be a duplicate of no. 801695. Grievance no. 801694 was closed on February 24, 2015. *See* Vickers Decl. Ex. 2, ECF No. 30-3 at 15.

As part of the investigation, Special Investigative Services ("SIS") Lieutenant Glen Cobb interviewed plaintiff in February 2015.[9] *See* Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J., ECF No. 30-6 ¶ 8; Supplemental Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J., ECF No. 34-3 ¶ 9; ECF No. 31 at 3, 7. Lieutenant Cobb denies that plaintiff said that defendant Baker had threatened him or had any kind of retaliatory animus towards plaintiff. *See* Supplemental Decl. of G. Cobb in Supp. Defs.' Mot. Summ. J., ECF No. 34-3 ¶¶ 9-11. Plaintiff disputes this. He asserts that he told Cobb that, according to Baker, the October 2014 incident was in retaliation for plaintiff's grievances. ECF No. 31. at 7.

### III. Parties' Arguments

Defendant argues that summary adjudication is warranted because grievance no. 802835 concerned a claim of excessive force and made no mention of a retaliatory motive. As such, it did not put the prison on notice of any claim of retaliation by Baker or provide the prison an opportunity to address such a claim.

In response, plaintiff argues that he repeatedly informed the institution of his complaints about Officer Baker's retaliatory animus in the course of informal communications, administrative grievances, and interviews prompted by his grievances.[10] Plaintiff argues that the written administrative remedy process is "not the sole means that the Plaintiff could make the Bureau of Prisons aware that there was a problem with Defendant Baker's [actions]." ECF No. 31 at 7. He does not expressly state that he filed a written grievance against Baker for retaliation or that he pursued an administrative grievance about Baker through all levels of review. He does, however, say that threats from correctional staff dissuaded him from pursuing administrative grievances.

Defendant responds by noting the absence of any evidence of a written grievance alleging retaliation by Officer Baker. He also argues that plaintiff's assertions that he was prevented from

---

[9] Plaintiff alleges that this interview took place in March 2016. Plaintiff Reply, ECF No. 31. at 3, 7.

[10] Plaintiff also requests that the court "allow the Plaintiff to conduct limited discovery before deciding the Defendant's premature motion for summary adjudication." ECF No. 31 at 6. The court will address this request after the analysis section.

filing grievances by threats and fear are contradicted by plaintiff's grievance-filing history and his assertion that he raised the retaliation issue multiple times in interviews.

**V.     Analysis**

**A.     Grievance No. 802835**

Grievance no. 802835 does not allege retaliation by defendant Baker. It does not allege that Baker had or acted out of a retaliatory animus towards plaintiff. It does not identify any retaliatory threats or other retaliatory animus prior to the October 13, 2014 incident. Plaintiff's grievances state that Borja retaliated against him by "writing him up," but plaintiff makes no such allegations against Baker.

Plaintiff's first grievance stated, "[Officer] Borja retaliated against me by writing me up," and "I received a write-up to stop me and/or cover-up for the use of excessive force." Vickers Decl. Ex. 2, ECF No. 30-3 at 24. Plaintiff's second grievance stated, "I received a write-up in retaliation for complaining about [the excessive force incident.]" *Id.* at 26. These statements indicate that plaintiff believed that he received a write-up as retaliation for complaining about Officer Baker's excessive force on October 13, 2014 incident, not that the October 2014 incident was retaliation for any of plaintiff's prior conduct.

To satisfy a prison's requirement that inmates exhaust remedies, a grievance must alert "the prison to the nature of the wrong for which redress is sought." *See Griffin*, 557 F.3d at 1120. The inmate need not include specific legal theories but must as least "alert the prison to a problem and facilitate its resolution." *Id.* In this case, plaintiff's grievance would put a reasonable investigating prison official on notice that plaintiff believed he had been written up in retaliation for complaining of an assault. However, nothing in his grievance suggests that plaintiff had been assaulted by defendant Baker in retaliation for filing grievances. The grievance would not put officials on notice that plaintiff believed he had been assaulted by defendant Baker because of prior protected First Amendment activity. Thus, this grievance is not sufficient to exhaust this claim.

**B.     OIA and Other Verbal Interviews**

Plaintiff argues that his OIA interviews with SIS officers and other correctional staff, in

10

which he allegedly told the interviewers that Baker's use of force was retaliatory, exhausted his administrative remedies. ECF No. 31. These interviews, however, do not comply with the requirements of BOP's administrative grievance process. *See* 28 C.F.R. § 542.10 *et seq.* Compliance with § 1997e(a) is mandatory, and inmates must adhere to all "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 85-86; *accord Sapp*, 623 F.3d at 818. Even accepting plaintiff's allegations that he mentioned Baker's retaliation in oral interviews as true, those oral interviews are not sufficient to satisfy the exhaustion requirements.

### C. Grievance No. 801695

Plaintiff states: "In January of 2016 I sent a letter to the Administrative Appeal coordinator asking for the status of my grievance against [Officer] Baker. Remedy #801695." ECF No. 31 at 12. In contradiction of this assertion, defendant produced a copy of grievance no. 801695, demonstrating that it concerned an alleged physical assault by Lt. Hayes in the main corridor of United States Penitentiary, Atwater, on September 14, 2014. Vickers Second Supp. Decl. Exh. 1, ECF No. 39-2 at 5. The grievance does not mention Officer Baker, and it therefore cannot exhaust this claim.

In sum, construing all facts in favor of the nonmoving party, the evidence indicates that defendants have met their burden of demonstrating that plaintiff failed to exhaust all available administrative remedies in relation to his retaliation claim against defendant Baker. Defendants' motion should be granted.

## VI. Rule 56(d) Request

Plaintiff asks the court to hold the motion for summary judgment in abeyance to allow him to pursue discovery to support his claim that he exhausted administrative remedies. ECF No. 31 at 4-6. Plaintiff alleges that he "has filed a discovery request for documents from defendants that would support his contention that the Plaintiff exhausted the available remedies the BOP provides for inmates who make substantiated claims of assault against staff." *Id.* at 4. He further contends that "Rule 26 Discovery will prove the BOP offers a supplementary procedure through SIS investigations to inform and alert the prison to a problem with staff." *Id.* at 5.

Federal Rule of Civil Procedure 56(d) allows a party opposing summary judgment to seek

a continuance if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *See also* Local Rule 260(b) ("If a need for discovery is asserted as a basis for denial of the motion, the party opposing the motion shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary."). "To prevail under [Rule 56(d)], parties opposing a motion for summary judgment must make '(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.'" *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Id.* at 1129-30 (quoting *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001)).

The Ninth Circuit has held that district courts should grant a Rule 56(d) motion "fairly freely" when the moving party seeks summary judgment before the non-moving party has had a realistic opportunity to pursue discovery relating to its theory of the case. *See Burlington N. Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *see also Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416-17 (9th Cir. 1987) ("A district court has wide latitude in controlling discovery, and its rulings will not be overturned in the absence of a clear abuse of discretion." (internal quotation marks and citation omitted)).

Here, plaintiff has not met his burden because his request fails to satisfy the requirements of *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004). For example, he does not "specifically identif[y] . . . relevant information." *Id.* Instead, he merely contends that defendants possess "documents" and "evidence" that will prove that he exhausted his claims. ECF No. 31 at 4-5. Plaintiff has also failed to establish the requirement of "some basis for believing that the information sought actually exists." *Emp'rs Teamsters*, 353 F.3d at 1129 (quoting *VISA Int'l Serv. Ass'n*, 784 F.2d at 1475). He alleges that "the Bureau of Prisons has an alternative administrative remedy for assaults committed by

12

retaliation against inmates." ECF No. 31 at 6 (capitalization altered). Specifically, he argues that oral notification through SIS interviews can exhaust his claims. ECF No. 31 at 7 ("[T]he written BOP-8; BP-9; BP-10 and BP-11 were not the sole means that the Plaintiff could make the Bureau of Prisons aware that there was a problem with Defendant Baker's statement and follow-up assault of the Plaintiff for filing grievances."). This assertion is belied by the regulations governing BOP's administrative grievance process, which do not reference an alternative procedure. *See* 28 C.F.R. §§ 542.10-542.19. And, as noted above, compliance with § 1997e(a) is mandatory, and inmates must adhere to all "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 85-86; *accord Sapp*, 623 F.3d at 818.

In sum, plaintiff has failed to satisfy the requirements necessary for a continuance under Federal Rule of Civil Procedure 56(d), and his request is denied. Since plaintiff made this request, over a year has passed, and discovery has presumably progressed. If plaintiff has new information that would defeat defendant Baker's motion, he should submit it with any objections to these findings and recommendations.

## IV. FINDINGS AND RECOMMENDATIONS

Accordingly, we recommend that defendant's motion for summary judgment for failure to exhaust administrative remedies in relation to the First Amendment retaliation claim against defendant Baker, ECF No. 30, be granted.

The undersigned submits the findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, plaintiff may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). Plaintiff's failure to file objections within the specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: January 31, 2019

_____
UNITED STATES MAGISTRATE JUDGE

No. 203.

14