UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER BAKER,<br><br>    Defendant. | Case No. 1:16-cv-01540-DAD-JDP<br><br>FINDINGS AND RECOMMENDATION THAT THE COURT DENY DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFF'S EXCESSIVE FORCE CLAIM<br><br>OBJECTIONS, IF ANY, DUE IN 14 DAYS<br><br>ECF No. 45 |

Plaintiff is a federal prisoner proceeding without counsel in this civil rights action brought under *Bivens vs. Six Unknown Agents*, 403 U.S. 388 (1971). The action proceeds against defendant Christopher Baker on plaintiff's Eighth Amendment[1] excessive force claim and First Amendment retaliation claim.[2] ECF No. 1; ECF No. 12; ECF No. 23.

---

[1] In *Ziglar v. Abbasi*, the Supreme Court examined "the reach and the limits of [its] precedent" concerning "*Bivens* and the ensuing cases." 137 S. Ct. 1843, 1854 (2017). The Court stated that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," and that, if a plaintiff asks for a *Bivens* remedy in a new context, courts must engage in a special factors analysis. *Id.* at 1857-60 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). As a result of *Abbasi*, there is some question whether an Eighth Amendment excessive force claim may be brought under *Bivens*. *See Thomas v. Matevousian*, No. 117CV01592AWIGSAPC, 2019 WL 266323, at *2 & n.1 (E.D. Cal. Jan. 18, 2019) (collecting cases that address prisoners' access to *Bivens* after *Abbasi*). However, this question is not before the court, and we need not address it here.

[2] On January 31, 2019, the court issued findings and recommendations that plaintiff's First Amendment retaliation claim be dismissed for failure to exhaust administrative remedies. ECF

1

Before the court is defendant's motion for summary adjudication of plaintiff's excessive force claim. ECF No. 45. Plaintiff filed an opposition,[3] ECF No. 46, and defendant filed a reply, ECF No. 49. The motion was submitted on the record without oral argument under Local Rule 230(*l*).[4] For the reasons set forth below, we recommend that the court deny defendant's motion.

## I. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

---

No. 56.

[3] Plaintiff filed a second "Response to the Defendant's Motion for Summary Judgement" on October 29, 2018. ECF No. 52. This filing, though captioned as Case No. 16-cv-01540, appears to concern a different case. Accordingly, we do not consider it.

[4] As required by *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998), plaintiff was provided with notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies via an attachment to defendant's motion for summary judgment. ECF No. 45.

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has shown there to be no genuine issue of material fact and demonstrated that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the

nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *accord Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B. Excessive Force under the Eighth Amendment**

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force" against inmates. *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). For claims arising out of the use of excessive physical force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). To facilitate this inquiry, the Supreme Court has articulated five factors to consider: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7.

While the extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment inquiry. *See id.* Whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation is contextual and responsive to contemporary standards of decency. *Id.* at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such standards are always violated when prison officials maliciously and sadistically use force to cause harm, whether or not significant injury is evident. *See id.*; *see also Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000) (holding no lasting injury required for an act to qualify as sexual assault because sexual assault was deeply offensive to human dignity); *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991) (holding that it is not the degree of injury that makes out a violation of the Eighth Amendment but rather use of official force or authority that is intentional, unjustified, brutal and offensive to human dignity). That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from

4

constitutional recognition *de minimis* uses of physical force. *Hudson*, 503 U.S. at 9-10 (concluding that blows directed at inmate which caused bruises, swelling, loosened teeth and a cracked dental plate were not *de minimis*).

## II. SUMMARY JUDGMENT RECORD

To decide a motion for summary judgment, a district court may consider materials listed in Rule 56(c). Those materials include depositions, documents, electronically-stored information, affidavits or declarations, stipulations, party admissions, interrogatory answers, "or other materials." Fed. R. Civ. P. 56(c). A party may object that an opponent's evidence "cannot be presented in a form that would be admissible" at trial, *see* Fed. R. Civ. P. 56(c)(2), and the court ordinarily rules on evidentiary objections before deciding a summary judgment motion to determine what materials the court may consider. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010); *Fonseca v. Sysco Food Servs. of Arizona, Inc*., 374 F.3d 840, 845 (9th Cir. 2004). Here, defendant presents the declaration of Brian VanDenover and accompanying exhibits, ECF No. 45-2; the declaration of Christopher Baker, ECF No. 30-4; and the supplemental declaration of Christopher Baker, ECF No. 45-3. Plaintiff presents his declaration. ECF No. 46. The court will also consider plaintiff's complaint to be part of the summary judgment record. ECF No. 1.

Plaintiff objects to the admissibility of Brian VanDenover's declaration, contending that VanDenover cannot be an "expert witness" because his testimony is "biased, unqualified and not relevant." ECF No. 46 at 1. VanDenover, according to his declaration, is a Special Investigative Services ("SIS") Technician at the United States penitentiary in Atwater, California ("USP Atwater"). ECF No. 45-2, Declaration of Brian VanDenover ¶ 1. In this role, VanDenover authenticates SIS records such as video surveillance records. *Id.* ¶ 2. As an exhibit to his declaration, VanDenover includes a surveillance video of the October 13, 2014 incident in which plaintiff alleges that defendant used excessive force. *Id.* ¶ 8. In his declaration, VanDenover describes, from his perspective, what occurs in the video. *Id.* ¶¶ 9-17. VanDenover also opines that Baker's actions were appropriate:

> Based upon my training and experience as a Correctional Officer and my having reviewed hundreds of surveillance videos as a SIS Technician, Officer Baker does not do anything out of the ordinary or improper when he applies hand restraints on Williams. The video does not show Baker pulling or twisting Williams' arm in any way to cause it harm during the entire episode.

*Id.* ¶ 18. In his objection to VanDenover's declaration, plaintiff argues that VanDenover mischaracterizes the incident and is unqualified to opine on whether Baker's actions were proper. ECF No. 46 at 1-2.

Contrary to plaintiff's assertions, defendant does not offer VanDenover's declaration as an expert opinion but rather as a means of authenticating the surveillance video, which VanDenover is competent to do. ECF No. 49 at 7 & n.9. However, plaintiff's objection as to VanDenover's description of the video is well-taken. The court will rely on the video itself, rather than the declarant's description of the video, in accordance with the best evidence rule. *See* Fed. R. Ev. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."); *United States v. Diaz-Lopez*, 625 F.3d 1198, 1200 (9th Cir. 2010) (describing the best evidence rule).

**A. The Complaint**

The allegations in plaintiff's complaint, ECF No. 1, are summarized as follows: In 2014, plaintiff filed grievances regarding various non-party correctional staff, and defendant, who was a correctional officer at the time, subsequently told plaintiff that it was not a good idea to file such grievances. In September 2014, plaintiff reported this threat to Warden Copenhaver. Copenhaver told plaintiff to talk with Assistant Warden Snyder. When plaintiff informed Snyder of the threat, Snyder responded that plaintiff was being paranoid. Neither Copenhaver nor Snyder investigated or acted upon plaintiff's concerns. Defendant was on probation at this time.[5]

On October 13, 2014, plaintiff agreed to submit to handcuffs.[6] Once plaintiff was in handcuffs, defendant "took [plaintiff's] arm and planted it on the ground and deliberately and maliciously twisted [his] bicep muscle until it was torn from the bone resulting in [his] permanent

---
[5] Plaintiff provides no further detail regarding defendant's alleged probation.
[6] In his complaint, plaintiff does not explain the circumstances that led to him being handcuffed.

loss of strength." ECF No. 1 at 3. Plaintiff stated, "You broke my arm, you're hurting me." *Id.* Baker responded, "That will teach you about filing grievances." *Id.* Correctional officer Borja was present; he did not intervene, but he did report the incident to Copenhaver and Snyder.[7] As a result of the incident, plaintiff was hospitalized from October 13, 2014 until October 20, 2014. Defendant "was terminated as a result of his use of excessive force against the plaintiff in October-November 2014." *Id.* at 4-5.

**B. Defendant's "Statement of Undisputed Facts"**

Defendant's statement of undisputed facts, ECF No. 45-4, is summarized as follows: While making routine rounds of inmates' cells on October 13, 2014, Senior Officer Specialist Borja observed what appeared to be a folded piece of paper in the hand of plaintiff. ECF No. 30-5, Declaration of Enrique Borja ¶ 4. Borja opened the door to plaintiff's cell and ordered plaintiff to show his right hand. *Id.* Plaintiff did not comply; instead, he placed both of his hands inside his sweat pants. *Id.*

After plaintiff refused to show Borja his right hand, Borja ordered plaintiff to withdraw the hand from his pants and submit to a pat search. *Id.* In response, plaintiff aggressively placed his body between Borja and the toilet and attempted to flush an object held in his right hand. *Id.* Borja immediately attempted to grab plaintiff to prevent him from destroying the item in his hand. *Id.* Plaintiff pushed past Borja and exited the cell door. *Id.* Borja immediately grabbed plaintiff outside the cell and took him to the ground. *Id.* Simultaneously, plaintiff reached through the railing of the top tier and dropped the item contained in his right hand. *Id.*

Seconds later, plaintiff got up and again attempted to flee. ECF No. 30-5, Declaration of Enrique Borja ¶ 5. At this time, defendant arrived to assist Borja in restraining plaintiff. ECF No. 30-4, Declaration of Christopher Baker ¶¶ 3, 5. As defendant arrived, Williams was on his feet, leaning against the upper tier railing and actively resisting Borja's attempts to place him in restraints. *Id.* ¶ 5. With Borja restraining plaintiff's right arm, defendant successfully restrained plaintiff's left arm. *Id.* Though Borja and defendant ultimately handcuffed plaintiff, he actively

---

[7] Plaintiff originally brought claims against Copenhaver, Snyder and Borja as well, but those claims were dismissed. *See* ECF No. 12; ECF No. 23.

7

resisted throughout the encounter. *Id.*; ECF No. 30-5, Declaration of Enrique Borja ¶ 7. Defendant used only the force he believed necessary to maintain institutional order and ensure the safety of Borja. ECF No. 45-3, Supplemental Declaration of Christopher Baker ¶ 5.

During the encounter, defendant did not say anything inappropriate to plaintiff, such as, "That will teach you about filing grievances." ECF No. 30-5, Declaration of Enrique Borja ¶ 8; ECF No. 45-3, Supplemental Declaration of Christopher Baker ¶ 4. Defendant did not do anything out of the ordinary when he put the hand restraints on plaintiff, such as pulling or twisting plaintiff's arm. ECF No. 30-5, Declaration of Enrique Borja ¶ 7.

### C. Plaintiff's "Specific Objection[s] to [Defendant's] Undisputed Material Facts"

Plaintiff challenges several aspects of defendant's version of events. Plaintiff disputes defendant's characterization of the initial confrontation. Specifically, plaintiff states that he was merely using the restroom and cleaning himself when Borja entered his cell and attacked him. ECF No. 46 at 2-3. The key factual issue, however, concerns plaintiff's characterization of defendant's actions to restrain plaintiff:

> Plaintiff did not resist throughout the application[;] Plaintiff was fully compliant by the time Baker arrived at the location. [] [Plaintiff] was not pulling away [when Baker and Borja handcuffed him] and Baker['s] twisting of his arm caused his arm to tear away from the bone—a torn biceps muscle. . . . Defendant Baker used more force than necessary to cause and stop Plaintiff from writing [grievances] on SIS staff.

*Id.* at 3. In plaintiff's declaration, he states that two other inmates heard defendant say "that will teach you about writing grievances." *Id.* at 7

### D. The Video of the Incident

The video of the incident, attached to VenDover's declaration, ECF No. 45-2, Declaration of Brian VanDenover ¶ 8, shows Borja patrolling along the second-floor walkway of the prison. The video shows Borja peer into a cell window and then open the cell door, entering the cell. The video does not show what occurs within the cell. Moments later, Borja and plaintiff spill out of the cell into the walkway. Borja appears to be on top of plaintiff. Plaintiff puts his arm through

8

the railing, possibly to drop an item. Once plaintiff appears to be subdued and lying against the railing, Borja stands up.

At this point, defendant can be seen running across the first floor toward the stairs leading to plaintiff and Borja. Borja leans over the railing, possibly to see what plaintiff dropped over the edge. As Borja leans over the railing, plaintiff rises and attempts to flee down the walkway from Borja. Borja immediately grabs plaintiff, and Borja restrains plaintiff against the walkway railing. Borja is grabbing plaintiff's right arm when defendant approaches. Defendant grabs plaintiff's left arm and moves it behind plaintiff's back. Together, defendant and Borja restrain plaintiff from behind, possibly placing handcuffs on him. Defendant and Borja move plaintiff toward plaintiff's cell. All three men stand in the doorway of plaintiff's cell. While they are in the doorway, the view of what occurs is obstructed by the cell door. More correctional officers arrive. Finally, several officers escort plaintiff down the stairs and out of the view of the camera.

The video, which has no audio, does not unambiguously show whether plaintiff actively resisted defendant's attempts to restrain him or whether defendant maliciously twisted plaintiff's arm.

## III. DISCUSSION

We first consider whether defendant, the moving party, has met his initial burden of "proving the absence of a genuine issue of material fact"—thus showing prima facie entitlement to summary judgment. *Celotex Corp.*, 477 U.S at 323. Defendant contends that "Officer Baker's actions were objectively reasonable in direct response to Williams' admitted disobedience of Officer Borja's orders." ECF No. 45-1 at 7. To support this argument, defendant presents evidence showing that (1) plaintiff actively resisted the orders of Borja and attempted to flee from Borja, ECF No. 30-4, Declaration of Christopher Baker ¶ 5; ECF No. 30-5, Declaration of Enrique Borja ¶ 7; (2) defendant assisted Borja in restraining plaintiff, using only the force he believed necessary to maintain institutional order and ensure the safety of Borja, ECF No. 45-3, Supplemental Declaration of Christopher Baker ¶ 5; and (3) defendant did not say anything inappropriate to plaintiff, such as, "That will teach you about filing grievances," ECF No. 30-5, Declaration of Enrique Borja ¶ 8; ECF No. 45-3, Supplemental Declaration of Christopher Baker

¶ 4.

Considering these alleged facts, the court finds that defendant's evidence "negat[es] an essential element of the nonmoving party's claim." *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. Specifically, defendant's evidence shows that defendant restrained plaintiff in "a good-faith effort to maintain or restore discipline," rather than "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). Therefore, defendant has met his initial burden.

Because defendant satisfied his initial burden, the burden shifts to plaintiff to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. Plaintiff contends that "there is a genuine issue of material fact [] that is in dispute." ECF No. 46 at 3. To support this argument, plaintiff presents evidence showing that (1) plaintiff did not physically resist defendant and Borja's attempts to restrain him, *id.* at 6; (2) defendant maliciously harmed plaintiff using excessive force, *id.* at 6-7; (3) defendant used force to retaliate against plaintiff filing grievances, rather than to maintain institutional order, *id.* at 7; and (4) defendant severely injured plaintiff, *id.* at 6-7. Considering the evidence "in the light most favorable" to plaintiff and drawing "all justifiable inferences" in favor of plaintiff, *Orr*, 285 F.3d at 772, we conclude that plaintiff has met his burden to present specific facts showing there to be a genuine issue of a material fact.

In his reply, defendant argues that "the video of the events is susceptible to only one reasonable interpretation: Officer Baker used reasonable force in placing handcuffs on Williams in a legitimate effort to restrain a resisting inmate and maintain order." ECF No. 49 at 1. Specifically, defendant contends that plaintiff's allegations that "'[o]n October 13, 2014 Officer Baker *took my arm and planted it on the ground*' and that 'Defendant Baker *planted Affiant's arm-hand on the floor*' [are] 'blatantly contradicted' by the video." *Id.* at 2 (quoting ECF No. 1 at 3; ECF No. 46, ¶ 16; *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

In *Harris*, the Supreme Court considered whether there was a genuine dispute of material fact whether respondent, a motorist fleeing a pursuing police car, was driving in such a way as to endanger human life. 550 U.S. at 374-75, 78. An "added wrinkle" was that the chase had been

caught on videotape, and the tape "so utterly discredited" respondent's version of events "that no reasonable jury could have believed him." *Id.* at 378, 380. The Court held: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

The instant case is unlike *Harris*. Despite defendant's contentions, plaintiff's version of the incident is not "blatantly contradicted" by the video. *Harris*, 550 U.S. at 380. As described above, the video shows that once defendant and Borja restrained plaintiff, they moved him back to his cell. At this point, for several moments, the view of all three individuals is obstructed by the cell door. Though the video does not show defendant injuring plaintiff's arm in the manner alleged by plaintiff, the alleged actions could have happened during this time, ECF No. 1 at 3, and we must and draw "all justifiable inferences" in favor of plaintiff, *Orr*, 285 F.3d at 772.

**IV.  Qualified Immunity**

Defendant contends that he is entitled to qualified immunity. Qualified immunity shields government officials from monetary damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *accord Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful." *Felarca*, 891 F.3d at 815.

To determine whether the law "clearly established" that the challenged conduct was unlawful, the court must consider whether the defendant "would have had fair notice that the action was unlawful." *Chappell v. Mandeville*, 706 F.3d 1052, 1056-57 (9th Cir. 2013). Qualified immunity does not attach when the law is "sufficiently clear that every reasonable official would have understood" that the conduct in question was unlawful. *See Rodriguez v. Swartz*, 899 F.3d 719, 732 (9th Cir. 2018). Although a binding precedent can help determine what a reasonable official would have known, "it is not necessary . . . that the very action in

question has previously been held unlawful." *Id.* at 732 (quoting *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017)). Qualified immunity does not attach in an "obvious case" of constitutional violation, even if the facts are novel. *See Rodriguez*, 899 F.3d at 734; *accord Hope v. Pelzer*, 536 U.S. 730, 738-39 (2002).

The first prong—"whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right"—need not long delay us. *Felarca*, 891 F.3d at 815. As the court noted at the screening stage, plaintiff's allegations state an Eighth Amendment claim for excessive force. ECF No. 12.

The second prong—"whether the law at the time of the challenged conduct clearly established that the conduct was unlawful"—is likewise easily answered in the affirmative. *Felarca*, 891 F.3d at 815. The Ninth Circuit has clearly established that force which is applied "maliciously and sadistically for the very purpose of causing harm," is a violation of the Eighth Amendment. *Jeffers v. Gomez*, 267 F.3d 895, 910-11 (9th Cir. 2001) (quoting *Whitley*, 475 U.S. at 320-21); *accord Martinez v. Stanford*, 323 F.3d 1178, 1180, 1183-84 (9th Cir. 2003) (holding that, because the law regarding excessive force was clearly established in 1994, qualified immunity was improperly granted to officers who allegedly beat an inmate during a cell extraction despite the inmate's lack of resistance); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (holding that the Eighth Amendment was violated by an assault while an inmate was not resisting). Plaintiff's allegations, viewed in the light most favorable to plaintiff, would establish that defendant violated clearly established law when he "took [plaintiff's] arm and planted it on the ground and deliberately and maliciously twisted [plaintiff's] bicep muscle until it was torn from the bone resulting in [the] permanent loss of strength in [plaintiff's] left arm after [plaintiff] had complied [with] . . . being handcuffed." ECF No. 1 at 3.

Plaintiff's allegations have satisfied both prongs of the qualified immunity inquiry. Thus, defendant is not entitled to qualified immunity.

V.     **FINDINGS AND RECOMMENDATIONS**

Accordingly, we recommend that defendant's motion for summary adjudication of plaintiff's excessive force claim, ECF No. 45, be denied.

12

The undersigned submits the findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). The parties' failure to file objections within the specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: February 25, 2019

UNITED STATES MAGISTRATE JUDGE

No. 203.