Carter C. White, CSB # 164149
ccwhite@ucdavis.edu
King Hall Civil Rights Clinic
U.C. Davis School of Law
One Shields Avenue, Building TB-30
Davis, CA 95616-8821
Telephone: 530.752.5440
Facsimile: 530.752.5788

*Attorney for Plaintiff,*
*Shannon Williams*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHANNON WILLIAMS,

                    Plaintiff,

vs.

OFFICER BAKER,

                Defendant.

Case No:  1:16-cv-01540-DAD-JDP

**PLAINTIFF'S BRIEF**

**REGARDING IMPACT OF**

***ZIGLAR V. ABBASI***

## TABLE OF CONTENTS

Table of Authorities.........................................................................iv

Statement of Facts. ........................................................................ 2

Procedural History.......................................................................... 3

Argument. ..................................................................................... 4

    I.     The Court Should Withdraw Its *Sua Sponte* Briefing Order..........4

        A. Screening Requirement and Waiver……………………………..4

        B. The PLRA does not allow ongoing screening; Defendant has
           waived application of *Ziglar*...................................................... 7

    II.    *Ziglar v. Abassi* Does Not Bar Williams's *Bivens* Action. ............. 8

        A. *Bivens* cases after *Ziglar*……………………………………..8

        B. Williams's case does not arise in a new *Bivens* context………10

        C. Williams has no adequate alternative remedy……………….....13

           1. The FTCA is not an adequate alternative remedy……....13

           2. The BOP administrative process is not an adequate
              alternative remedy. ...................................................... ..17

           3. The PLRA is not an adequate alternative remedy……..19

        D. No "special factors" are present in this case…………………..21

           1. This case is not about policies or policymakers……….21

           2. Extending *Bivens* does not implicate national security..24

3.  Extending *Bivens* would not have problematic foreign
policy implications......................................................... 24

Conclusion. ................................................................................. 25

iii

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Banda v. Gundumolgula*, No. 2:13-cv-00667-MCE-CKD-P, 2013 WL 11332786

   (E.D. Cal. Sept. 12, 2013) .................................................................................. 5

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) ............................................................................... *passim*

*Carlson v. Green*, 446 U.S. 14 (1980)............................................................ *passim*

*Castellanos v. United States*, No. 3:18-cv-02334-JM-AGS, 2020 WL 619336
(S.D. Cal. Feb. 10, 2020) ................................................... 12, 16, 23, 25

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) .............................................. 15

*Estelle v. Gamble*, 429 U.S. 97 (1976) ................................................................ 11

*Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010)................................................... 6

*Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633 (9th Cir. 1988) ........ 5

*Greenwood v. F.A.A.*, 28 F.3d 971 (9th Cir. 1994) ................................................ 6

*Heffernan v. City of Paterson*, 578 U.S. ___, 136 S.Ct. 1412 (2016) ..................... 8

*Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997)...................................................... 4

*Hudson v. McMillian*, 503 U.S. 1 .......................................................................... 11

*Hunt v. Matevousian*, 336 F.Supp.3d 1159 (E.D. Cal. 2018)........................... 17-18

*Hunt v. Matevousian*, No. 18-17464 (9th Cir.)...................................................... 17

*Jerra v. Magana*, No. 18-55678, 2019 WL 2273662 (9th Cir. Feb. 13, 2019) 15, 24

*Jerra v. United States*, No. 2:12-cv-01907-ODW-AGR, 2018 WL 1605563,

   (C.D. Cal. Mar. 29, 2018) ........................................................... 15, 23

*Jones v. Bock*, 549 U.S. 209 (2007)............................................................ 6, 7, 17

*Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018)...................................................... 9

*Linlor v. Polson*, 263 F.Supp.3d 613 (E.D. Va. 2017) ........................................... 15

*McLean v. Gutierrez*, No. 5:15-cv-275-RGK-SP, 2017 WL 6887309 (C.D. Cal.

   Sept. 28, 2017), *report and recommendation adopted*, 2018 WL 354604 (C.D.

   Cal. Jan. 10, 2018) ...................................................................... *passim*

*Moneyham v. United States*, No. 5:17-cv-00329-VBF-KK, 2018 WL 3814586 (C.D. Cal. May 31, 2018), *report and recommendation adopted*, 2018 WL 3807839 (C.D. Cal. Aug. 6, 2018). ........................................................... 14-15, 22

*Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014) ...................................................... 5

*Olausen v. Murguia*, No. 3:13-cv-00388-MMD, 2014 WL 6065622 (D. Nev. Nov. 12, 2014) ........................................................................................................ 5

*Porter v. Nussle*, 534 U.S. 516 (2002) .................................................................. 19

*Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010) .......................................... 6, 17

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016) ............................... 8

*Rodriguez v. Swartz*, 899 F.3d 719 (9th Cir. 2018) ...................................... *passim*

*Roundtree v. Adams*, No. 1:01-cv-6502-LJO-SMS, 2007 WL 1232173 (E.D. Cal. Apr. 25, 2007) ........................................................................................... 6

*Shook v. El Paso County*, 386 F.3d 963 (10th Cir. 2004) ...................................... 7

*State of Nev. v. Watkins*, 914 F.2d 1545 (9th Cir. 1990) ....................................... 6

*Sutter v. United States*, No. 2:17-cv-07245-SVW-DFM, 2019 WL 1841905 (C.D. Cal. Mar. 12, 2019) ................................................................................. 20

*Thomas v. Matevousian*, No. 1:17-cv-01592-AWI-GSA (PC), 2019 WL 266323 (E.D. Cal. Jan. 18, 2019) ................................................................................ 20

*United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) .................................... 5

*Wheeler v. Wexford Health Services, Inc.*, 689 F.3d 680 (7th Cir. 2012) ........... 4, 7

*Wolfel v. Collins*, No 2:07-cv-1296, 2011 WL 14457 (S.D. Ohio Jan 4. 2011) ... 5, 7

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2017) .................................................. 6

*Zarate v. Berryhill*, No. 1:18-cv-00316-JDP, 2019 WL 2285388 (E.D. Cal. May 29, 2019) ......................................................................................................... 6

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ........................................................ *passim*

v

**Other Authorities**

28 C.F.R. § 552.20 ............................................................................. 21

28 U.S.C. § 1915A ............................................................................. 3

28 U.S.C. § 1915A(a) ...................................................................... 4, 7

28 U.S.C. §1915(e)(2)(B)(ii) ............................................................ 3

28 U.S.C. § 2680(h) .......................................................................... 13

42 U.S.C. § 1983 ............................................................................... 19

42 U.S.C. § 1997e(a) ........................................................................ 19

Fed. R. Civ. Proc. 23 .......................................................................... 7

Fed. R. Civ. Proc. 56(d) ...................................................................... 8

Federal Tort Claims Act (FTCA) ............................................... *passim*

Prison Litigation Refom Act (PLRA) ......................................... *passim*

Westfall Act ...................................................................................... 16

U.S. Const., Amend. IV ............................................................... *passim*

U.S. Const., Amend. VIII ............................................................ *passim*

Plaintiff Shannon Williams brought this civil rights action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). Plaintiff proceeds against Defendant Baker on his Eighth Amendment excessive force claim. ECF No. 1. The Magistrate Judge appointed pro bono counsel for the limited purpose of briefing whether Plaintiff's Eighth Amendment allegation states a claim upon which relief may be granted in light of *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). ECF Nos. 69, 70.

This Court should continue to permit Plaintiff Williams to pursue a *Bivens* remedy. The PLRA screening requirement is an early review of the pleadings, and the statute does not grant the Court authority for ongoing screening and dismissal this late in a case. Should the Court reach the *Ziglar* issue, it should allow Plaintiff's claim because Baker was a federal officer who violated Plaintiff's Eighth Amendment right to be free from excessive force. This case does not present a new context because *Bivens* itself included allegations of excessive force, and *Carlson v. Green* extended *Bivens* to claims by prisoners under the Eighth Amendment. Should this Court disagree, and decide that Plaintiff's case presents a new context, *Ziglar* does not bar a *Bivens* claim because no adequate alternative remedies are available to Plaintiff, and no special factors counsel against the extension of *Bivens* to this case.

1

## Statement of Facts

At the time of the incidents giving rise to this action, Plaintiff Williams was a prisoner and Defendant Baker was a correctional officer at the United States Penitentiary in Atwater, California. On previous occasions, Defendant Baker had boasted "that he could really hurt an inmate" from things he learned as a military police officer in the Navy. ECF No. 46, at 7.

In September of 2014, Defendant Baker confronted Plaintiff Williams about grievances Plaintiff had filed regarding prison staff. ECF No. 1, at 4. Defendant Baker suggested to Plaintiff that it might not be a good idea to file such grievances. *Id*. That same month, Plaintiff reported Defendant's threatening conduct to both Warden Copenhaver and Assistant Warden Snyder. *Id*. When Plaintiff informed Snyder of the threat, Snyder responded that Plaintiff was being paranoid. *Id*. Plaintiff Williams's concerns were not investigated. *Id.*

On October 13, 2014, after another officer had placed handcuffs on Plaintiff, Defendant Baker planted Plaintiff's arm on the ground and intentionally twisted it, separating the muscle from the bone. *Id.* at 3. When Plaintiff Williams screamed "you broke my arm," Defendant Baker responded, "that will teach you about filing grievances." *Id.*, at 4. Defendant Baker's use of excessive force caused Plaintiff to suffer a serious and painful injury that has caused a permanent loss of strength in Plaintiff's left arm. *Id.*, at 3; ECF No. 46, at 6. As a result of

the incident, Plaintiff was hospitalized from October 13, 2014 until October 20, 2014. ECF No. 1, at 3. Assistant Warden Snyder informed Plaintiff that Defendant was terminated while Plaintiff was at the hospital. *Id.*, at 5.

<u>Procedural History</u>

Plaintiff Williams initiated this action by filing a complaint on October 13, 2016. ECF No. 1. On January 30, 2017, the Magistrate Judge screened Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii) and found the "Plaintiff alleges sufficient facts to state an excessive force claim against Defendant Baker." ECF No. 12, at 4. Plaintiff explicitly opted not to amend his complaint, electing to proceed only on the claims found to be cognizable in the Magistrate Judge's screening order. ECF No. 13. On June 19, 2017, the Supreme Court decided *Ziglar v. Abassi*, 137 S.Ct. 1843 (2017). On June 27, 2017, Defendant Baker filed his Answer to Plaintiff's Complaint, and included as a purported affirmative defense that Plaintiff's *Bivens* claim is barred by *Ziglar*. See ECF No. 26, at 4-5.

On July 3, 2018, Defendant moved for summary adjudication on Plaintiff's excessive force claim. ECF No. 45. Despite having raised *Ziglar* in his Answer, Defendant failed to raise it in the motion, contending only that the facts did not support an Eighth Amendment claim and that Defendant was entitled to qualified immunity. ECF No. 45-1. Defendant mentioned *Ziglar* in his Reply Brief in

support of the motion, but only obliquely in connection with his challenge to the continued viability of *Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997). See ECF No. 49, at 6 and n. 5. The Magistrate Judge recommended denial of the motion. ECF No. 59. Defendant raised his *Ziglar* argument for the first time in his objections to the Magistrate Judge's findings and recommendations. See ECF No. 60, at 4-7. The District Court denied Defendant's motion for summary adjudication on Plaintiff's excessive force claim. ECF No. 61. The Court found that Defendant had waived the *Ziglar* argument by raising it for the first time in the objections. *Id.*, at 2.

Nevertheless on May 14, 2019, the Magistrate Judge issued a *sua sponte* order requiring the parties to brief the *Ziglar* issue, citing the PLRA's screening requirements. ECF No. 62. After Plaintiff moved for appointment of counsel, the Magistrate Judge appointed the undersigned as counsel for the limited-purpose of briefing whether Plaintiff's Eighth Amendment allegation states a claim upon which relief may be granted in light of *Ziglar*. ECF Nos. 69, 70.

<u>Argument</u>

I.    <u>The Court Should Withdraw Its Sua Sponte Briefing Order.</u>

A. <u>Screening Requirement and Waiver</u>

The PLRA requires the court to screen complaints "as soon as practicable." 28 U.S.C. § 1915A(a); *Wheeler v. Wexford Health Services, Inc.*, 689 F.3d 680,

681-82 (7th Cir. 2012). See also *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (PLRA requires district courts to screen complaints "before or soon after docketing"). The PLRA's screening requirement is a threshold requirement addressing the pleadings and does not impose on a court an ongoing obligation to *sua sponte* and continuously evaluate the sufficiency of an inmate's action even after counsel has entered an appearance on behalf of the defendants. *Wolfel v. Collins*, No 2:07-cv-1296, 2011 WL 14457, *3 (S.D. Ohio Jan 4. 2011) (disallowing limitations affirmative defense waived by defendants). *See also Olausen v. Murguia*, No. 3:13-cv-00388-MMD, 2014 WL 6065622, at *5 (D. Nev. Nov. 12, 2014) (defendants' position that PLRA mandates federal courts to screen every proposed amended prisoner complaint post-answer has no support in PLRA and is contrary to the policy underlying the statute).

As the District Court has already noted in the present case, "[a]rguments raised for the first time in objections to findings and recommendations are waived." ECF No. 61, at 2 (citing *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992)); see also *Banda v. Gundumolgula*, No. 2:13-cv-00667-MCE-CKD-P, 2013 WL 11332786 (E.D. Cal. Sept. 12, 2013) (district court has discretion to decline to consider arguments not raised before the Magistrate Judge). Arguments raised for the first time in a reply brief are also

5

waived. *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2017) (district court need not consider arguments raised for the first time in reply brief); *Zarate v. Berryhill*, No. 1:18-cv-00316-JDP, 2019 WL 2285388, at *3 (E.D. Cal. May 29, 2019) (citing *Zamani v. Carnes*, 491 F.3d at 997, *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (courts "review only issues which are argued specifically and distinctly in a party's opening brief"), and *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (declining to address an argument made initially in reply because it would be unfair to the opposing party)).

The Supreme Court, the Ninth Circuit, and the former presiding judge of this Court have all recognized that "courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Jones v. Bock*, 549 U.S. 209, 212 (2007) (failure to exhaust is an affirmative defense not a pleading requirement). "In drafting the PLRA, 'when Congress meant to depart from the usual procedural requirements, it did so expressly.' . . . [T]he PLRA 'does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself.'" *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (allowing addition of newly-exhausted claims in amended complaint) (quoting *Jones v. Bock*, 549 U.S. at 216, 214); *Roundtree v. Adams*, No. 1:01-cv-6502-LJO-SMS, 2007 WL 1232173, at

*8 (E.D. Cal. Apr. 25, 2007) (allowing supplemental pleading) (citing *Shook v. El Paso County*, 386 F.3d 963 (10th Cir. 2004) (PLRA does not alter Rule 23 class certification analysis)).

>   B.   The PLRA does not allow ongoing screening; Defendant has waived application of *Ziglar.*

In his Order requiring the parties to file briefs, the Magistrate Judge states "[w]e must now consider the question" of whether *Ziglar v. Abassi* bars Plaintiff's Eighth Amendment claim. ECF No. 62, at 2. But this is not the case. In fact, this Court has already determined that it must *not* consider this question. ECF No. 61, at 2. More precisely, Defendant forced that determination by waiving this argument in its motion for summary adjudication on excessive force. *Id*. Nothing in the PLRA permits a court to re-screen a complaint more than two years after its screening order. 28 U.S.C. § 1915A(a); *Wheeler v. Wexford Health Services, Inc*., 689 F.3d at 681-82. The PLRA's screening requirement is a threshold requirement addressing the pleadings, not a source of judicial power to repeatedly screen complaints throughout the pendency of a prisoner's lawsuit. *Wolfel v. Collins*, 2011 WL 14457, at *3. The Magistrate Judge's briefing order is an unnecessary and unauthorized "depart[ure] from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Jones v. Bock*, 549 U.S. at 212.

This Court has imposed procedural requirements against Plaintiff, for example, in denying his Rule 56(d) motion in granting Defendant's motion for summary judgment that Plaintiff failed to exhaust his administrative remedies for his First Amendment retaliation claim. ECF No. 38, at 14. The Court should not impose a harsher set of procedures on prisoner litigants than it does on non-prisoners in the same case. "After all, in the law, what is sauce for the goose is normally sauce for the gander." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2108 (2016) (quoting *Heffernan v. City of Paterson*, 578 U.S. ___, ___, 136 S.Ct. 1412, 1418 (2016)). The Court should withdraw the briefing order as unnecessary.

II.   Ziglar v. Abassi Does Not Bar Williams's Bivens Action.

Should this Court reach the issue, *Ziglar* does not bar Plaintiff's Eighth Amendment cause of action. Williams's excessive force case does not arise in a new context from that of *Bivens* and *Carlson*. Even if the case were somehow construed as arising in a new context, there are no alternative adequate remedies available and no other special factors warrant hesitation. The Court should allow Williams to proceed to trial on this claim.

A. *Bivens* cases after *Ziglar*

In *Bivens*, the Supreme Court recognized for the first time an implied damages action against federal employees who violate a person's Fourth

8

Amendment right against unreasonable searches and seizures. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017). The complaint in *Bivens* included the allegation "that unreasonable force was employed in making the arrest." *Bivens*, 403 U.S. at 389. In *Carlson v. Green* 446 U.S. 14 (1980), the Court extended *Bivens* to a claim that federal prison officials violated the Eighth Amendment by failing to provide adequate medical treatment to a prisoner.

In *Ziglar*, the Supreme Court "articulated a two-part test for determining whether *Bivens* remedies should be extended." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018) (citing 137 S.Ct. at 1859-60):

> First, courts must determine whether the plaintiff is seeking a *Bivens* remedy in a new context. If the answer to this question is no, then no further analysis is required. If the answer is "yes," then the court must determine whether special factors counsel hesitation.

*Id*. (internal quotations and citations omitted). If this Court determines that the present case presents a new context, then it can extend *Bivens* only if two conditions are met: "[P]laintiff must not have any other adequate alternative remedy [and] there cannot be any 'special factors' that lead [the Court] to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." *Rodriguez v. Swartz*, 899 F.3d 719, 738 (9th Cir. 2018).

The *Ziglar* Court conducted a special factors analysis focused on large-scale policy decisions, national security interests, and alternative available

remedies, and ultimately decided a *Bivens* remedy should not be extended to a claim challenging "the confinement conditions imposed on illegal aliens pursuant to a high-level executive policy created in the wake of a major terrorist attack on American soil." *Id*. at 1860-63.

      B.    <u>Williams's case does not arise in a new *Bivens* context.</u>

      A claim arises in a new *Bivens* context if the case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Ziglar*, 137 S. Ct. at 1859. The Court provided a non-exhaustive list of "differences that are meaningful enough to make a given context a new one":

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id., at 1859-60.

      While *Bivens* arose in the Fourth Amendment context, and Williams's case falls under the Eighth Amendment, the constitutional right at issue in both actions is the right to be free from excessive force by law enforcement officials. And while *Carlson* was an Eighth Amendment medical care case, Williams's case does not differ from *Bivens* or *Carlson* in a meaningful way. All three cases

involve treatment of Plaintiffs by line officers or health care providers – the official action at issue in each case is highly specific. The judicial guidance in all the cases is also similar – in *Bivens* as in the present case it is that officers should use only the force that is reasonable in carrying out an arrest, and in *Carlson* it is that an individual prisoner's medical care must be free from deliberate indifference. There is no risk of disruptive intrusion by the judiciary when all that is required is that officers follow the law and no damages will be awarded against them.

As did the plaintiff in *McLean v. Gutierrez*, No. 5:15-cv-275-RGK-SP, 2017 WL 6887309 (C.D. Cal. Sept. 28, 2017), *report and recommendation adopted*, 2018 WL 354604 (C.D. Cal. Jan. 10, 2018), Williams challenges "an individual instance of discrimination or law enforcement overreach." *Id*., at *19 (internal quotations omitted).

> While plaintiff's case arises in a slightly different *Bivens* context, it nonetheless has similar aspects to *Carlson* in that it is an Eighth Amendment Cruel and Unusual Punishment claim against a federal prison official. Indeed, an excessive force claim is a quintessential civil rights claim, with the Supreme Court having long recognized that excessive force by a prison official violates the Eighth Amendment, just as deliberate indifference to medical needs does.

*Id*., at *19 (citing *Hudson v. McMillian*, 503 U.S. 1, 5–12 (excessive force); *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976) (deliberate indifference to medical needs)).

11

> Further, plaintiff challenges a single instance of misconduct rather than any high level policies. See *Ziglar*, 137 S.Ct. at 1862. Individual instances of misconduct "due to their very nature are difficult to address except by way of damages actions after the fact." *Id*. This case presents a relatively simple question of whether a federal official applied excessive force.

*McLean v. Gutierrez*, 2017 WL 6887309, at *19.

Earlier this year, the Southern District Court denied a motion for summary judgment in a non-prisoner case with a *Bivens* claim against a CBP Officer for violation of plaintiff's Fourth Amendment right, and an FTCA claim against the United States. *See Castellanos v. United States*, No. 3:18-cv-02334-JM-AGS, 2020 WL 619336, at *3, *7 (S.D. Cal. Feb. 10, 2020). In *Castellanos*, the plaintiff alleged that the CBP Officer "punched [plaintiff] 6-7 times after the handcuffs were on him and his right arm was twisted." *Id*. at 2. An X-ray of Plaintiff's elbow was "'suggestive of an occult fracture around the elbow joint' and a CT scan of the chest revealed 'minimally displaced ribs.'" *Id*. The Court decided that there were enough similarities to the original *Bivens* case to conclude that the case does not presents a new context for a *Bivens* claim. *Id*. at 5-6. The same is true in the present case, any analysis by this Court under *Ziglar* should end here.

//

//

C.  Williams has no adequate alternative remedy.

1.  The FTCA is not an adequate alternative remedy.

In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court held that a *Bivens* remedy remains available to a plaintiff even though the same allegations in the plaintiff's action could also support a suit against the United States under the Federal Tort Claims Act. The Court has not overturned *Carlson*.

"[N]othing in the [FTCA] or its legislative history . . . show[s] that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations." 446 U.S. at 19. The FTCA was passed long before the Court decided *Bivens*. *Id*. Congress amended the FTCA in 1974 and added the provision under which Plaintiff Williams could sue the United States on account of Officer Baker's assault, 28 U.S.C. § 2680(h). *Id*. The amendment's legislative history "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action. Id., at 20. In addition, Congress explicitly states when it intends to make FTCA an exclusive remedy, and it has not done so for § 2680(h) torts. *Id*.

The Court in *Carlson* cited four additional reasons an FTCA action does not preclude one for *Bivens*: (1) as a remedy against an individual defendant, *Bivens* is a more effective deterrent that an FTCA action; (2) punitive damages are available under *Bivens*, unlike under FTCA; (3) a plaintiff can elect a jury

13

trial under *Bivens* but not under FTCA; and (4) the FTCA remedy, unlike *Bivens*, is limited to the tort law of the place where the tortious conduct occurred. *Id*., at 20-23.

A number of district courts have concluded that the availability of the FTCA does not preclude plaintiffs from litigating claims brought under *Bivens*. For example, in 2017 in a case cited above, the Central District Court, recognizing the availability of an FTCA remedy, permitted an Eighth Amendment excessive force claim against a federal prison officer for sexually assaulting a prisoner during a pat-down search. *McLean v. Gutierrez*, 2017 WL 6887309, at *19. The Court concluded that "[T]he mere availability of a claim under the FTCA is not sufficient to foreclose a *Bivens* claim." *Id.*

The Central District Court reached a similar conclusion in *Moneyham v. United States*, where a pro se prisoner brought an Eighth Amendment excessive force claim against federal employees and found that the "mere availability" of an FTCA claim "is not sufficient to foreclose a *Bivens* claim." *Moneyham v. United States*, No. 5:17-cv-00329-VBF-KK, 2018 WL 3814586, at *4 (C.D. Cal. May 31, 2018), *report and recommendation adopted*, 2018 WL 3807839 (C.D. Cal. Aug. 6, 2018). There the plaintiff alleged that defendants tried to physically force him into a cell with a mentally ill inmate and assaulted him for protesting. *Id.* at 3. His allegations include plaintiff being slammed to the floor; his head banged against a

14

concrete block; a Defendant pressing his knee on plaintiff's neck while another Defendant pulled his body in the opposite direction; and defendants leaving plaintiff "unattended in [ ]'excessively tight restraints' for over eight hours." *Id*. The plaintiff was "unable to use the bathroom or drink any water and was denied his evening meal and medication." *Id*. In addition to an Eighth Amendment excessive force claim against defendants, the plaintiff brought an FTCA claim against the United States of America for assault and battery. *Id*. at 1. *Moneyham* cited *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) where the Court noted that Congress intended the FTCA and *Bivens* to serve as 'parallel' and 'complementary' sources of liability." *Id.,* at 4.

In its denial of defendants' post-*Ziglar* motion to overturn the verdict in *Jerra v. United States,* the Court stated that the available alternative remedies to *Bivens* (including an FTCA remedy) amount to "no alternatives at all." *Jerra v. United States*, No. 2:12-cv-01907-ODW-AGR, 2018 WL 1605563, at *5 (C.D. Cal. Mar. 29, 2018), *appeal dismissed sub nom*. *Jerra v. Magana*, No. 18-55678, 2019 WL 2273662 (9th Cir. Feb. 13, 2019) (quoting *Linlor v. Polson*, 263 F.Supp.3d 613, 620 (E.D. Va. 2017)). One of the plaintiff's claims in *Jerra* was an Eighth Amendment claim based on injuries he suffered when a prison officer grabbed plaintiff, spun him around, and after plaintiff went on the ground, the

officer hit plaintiff and jumped on his back. *Id.* at 2. The attack damaged plaintiff's cervical spine and caused a laceration above his eye. *Id.*

The defendant in *Jerra* argued that plaintiff had alternative remedies such as "injunctive relief, state tort law, the FTCA, and BOP administrative remedies." *Id.* at 5. The Court disagreed that these remedies preclude a *Bivens* remedy because alternative remedies "need to provide 'roughly similar incentives' to deter the bad conduct, and compensate the plaintiff" and "[t]hese remedies do not provide roughly the same deterrent effect, or compensation[.]" *Id.* (citations omitted). *Jerra* applies to the instant case because as was the case with the plaintiff in *Jerra*, Plaintiff Williams suffered a permanent injury, and no other remedy will provide the punitive damages available to a *Bivens* plaintiff.

In the *Castellanos* Fourth Amendment case cited above, although Plaintiff has an FTCA claim, his "legal remedies against [the CBP Officer] are limited to *Bivens* claims" for "the Westfall Act is clear [] that the protection afforded federal employees for common law torts 'does not extend or apply to a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." *Id.* at 7 (quoting *Rodriguez*, 899 F.3d at 740). *Castellanos* appears to agree with *Rodriguez* that FTCA's exception for *Bivens* claims "ensures that federal officers cannot dodge liability for their own

16

constitutional violations by foisting their liability onto the government." *Rodriguez*, 899 F.3d at 740.

While the *Castellanos* Plaintiff is not a prisoner and his claim is based on his Fourth Amendment rights, the case is further evidence of a trend among the district courts to allow both FTCA and *Bivens* claims to proceed in excessive force cases. Defendant Baker should be prevented from dodging his liability for the harm he has caused Plaintiff Williams. Permitting Plaintiff's *Bivens* claim will ensure that Defendant answers for the permanent injury he has inflicted on Plaintiff Williams.

> 2.   The BOP administrative process is not an adequate alternative remedy.

In his objection to the Magistrate Judge's denial of the MSJ of the excessive force claim, Plaintiff Baker argued that Williams' claim should be dismissed pursuant to *Hunt v. Matevousian*, 336 F.Supp.3d 1159, 1170 (E.D. Cal. 2018), *appeal filed*, No. 18-17464 (9th Cir.).[1] ECF No. 60, at 1. In *Hunt*, the plaintiff was a disabled prisoner and one of his claims was an Eighth Amendment claim based on excessive force. *Id.* at 1168. The plaintiff alleged that a correctional officer

---

[1] The Court in *Hunt* had already screened the complaint, five months after *Ziglar* was decided, and found that "Plaintiff stated a cognizable claim for excessive force." 336 F.Supp.3d at 1163. The Court re-screened the same claim almost a year later after Hunt attempted an interlocutory appeal, an apparent "deviat[ion] from the usual procedural practice" in contravention to *Rhodes v. Robinson*, 621 F.3d at 1005 and *Jones v. Bock*, 549 U.S. at 214, 216.

assaulted him during the dinnertime meal, that he "slammed up the tray door, smashing Plaintiff's hand between the tray door and the cell door." *Id.* The Court denied extension of *Bivens* in this case because Plaintiff purportedly had alternative remedies, "including the Bureau of Prisons administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief. *Id.* at 1169. The Court in Hunt gave no explanation for its determination that any of these alternatives would actually remedy a claim for damages based on officer excessive force. In the present case, Plaintiff Williams's injury is more severe than the injuries suffered by the plaintiff in *Hunt*. No alternative remedy will provide Williams with a comparable remedy or will hold Defendant responsible for his constitutional violations. Plaintiff Williams should not be prevented from pursuing a *Bivens* remedy.

      The better-reasoned decisions reject this conclusion.

[P]laintiff has already exhausted his administrative remedies for his [excessive force] claim . . . through BOP's four-tiered process, as required under the PLRA. Thus the court concludes none of defendants' suggested alternative remedial processes amounts to an effective alternative at all.

*McLean v. Gutierrez*, 2017 WL 6887309, at *19. The administrative grievance process provides no adequate means of compensating Williams for the harm he suffered when Baker assaulted him, and the Court should allow his Eighth Amendment claim to proceed.

### 3.  The PLRA is not an adequate alternative remedy.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[F]ederal prisoners suing under Bivens must first exhaust inmate grievance procedures[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Dissenting in *Ziglar*, Justice Breyer found "strong evidence that Congress assumed that *Bivens* remedies would be available to prisoners when it enacted the PLRA—e.g., Congress continued to permit prisoners to recover for physical injuries, the typical kinds of Bivens injuries." *Ziglar*, 137 S. Ct. at 1878 (Breyer, J., dissenting). The Court in *McLean v. Gutierrez* allowed a prisoner's Eighth Amendment excessive force claim to proceed because, *inter alia*, the PLRA deals with high-level policies and plaintiff's claim was a "simple question of whether [a] federal official applied excessive force[.]" *McLean v. Gutierrez*, No. 5:15-cv-00275-RGK-SP, 2017 WL 6887309 (C.D. Cal. Sept. 28, 2017).

Officer Baker moved for summary judgment for failure to exhaust administrative remedies on Williams's retaliation claim. ECF No. 30. A similar argument was not asserted for failure to exhaust remedies for Plaintiff's excessive force claim. *Id*., ECF No. 56 at 1. In fact, Officer Baker has argued that

Administrative Remedy Request No. 802835 focused on a claim of excessive force. ECF No. 56 at 9. Thus, Plaintiff Williams has exhausted his administrative remedies before filing suit and no longer has such remedies as an alternative to *Bivens*. Also, as in *McLean*, Plaintiff Williams's claim is a simple question of whether a federal official applied excessive force.

The Court in *Thomas v. Matevousian* found that the absence of Congressional action and the existence of the PLRA counseled against extending *Bivens* to plaintiff's conditions of confinement claim. *Thomas v. Matevousian*, No. 1:17-cv-01592-AWI-GSA (PC), 2019 WL 266323 (E.D. Cal. Jan. 18, 2019). However, *Thomas* did not involve an excessive force claim and many California District Courts deciding excessive force cases have permitted a *Bivens* claim to proceed in light of *Ziglar* and despite the availability of alternative remedies. *See Sutter v. United States*, No. 2:17-cv-07245-SVW-DFM, 2019 WL 1841905 (C.D. Cal. Mar. 12, 2019) ("[T]he Court agrees with other judges in this district who have concluded that neither alternative remedial processes nor other special factors preclude an excessive force damages claim, and thus held that, like deliberate indifference in *Carlson*, excessive force is a 'quintessential civil rights claim' that involves an individual instance of misconduct."). As with the BOP administrative grievance issue, the better-reasoned decisions hold that nothing in

the PLRA counsels against allowing an Eighth Amendment excessive force claim

proceed under *Bivens*.

### D. No "special factors" are present in this case

According to the Ninth Circuit, "[t]he special factors analysis is almost always

performed at a high level of specificity, not at the abstract level." *Rodriguez*, 899

F.3d at 719, 744. Therefore, we must focus on concrete facts and circumstances of

William's specific excessive force claim, not excessive force claims generally.

#### 1. This case is not about policies or policymakers.

According to *Ziglar,* a special factor is present when allowing a *Bivens* suit

would occasion interference with "sensitive functions of the Executive Branch."

*Ziglar*, 137 S.Ct. at 1860-1861. In *Ziglar*, the plaintiffs sued policymakers,

including the Attorney General and the FBI Director, in order to "challenge major

elements of the Government's whole response to the September 11 attacks." *Id*. at

1849.

Plaintiff Williams is not challenging any government policy. Also,

government policy expressly prohibited Defendant Baker from using excessive

force in the circumstances alleged by Williams. Under 28 C.F.R. § 552.20, "[t]he

Bureau of Prisons authorizes staff to use force only as a last alternative after all

other reasonable efforts to resolve a situation have failed," and "[w]hen authorized,

staff must use only that amount of force necessary to gain control of the inmate, to

protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order."

Officer Baker was a rank-and-file officer, not a policy-making official, a Warden, or a member of the of the "executive staff" mentioned in the Plaintiff's complaint.   (ECF No. 1 at 4.) Therefore, the instant case is like the ones that *Ziglar* distinguishes as "difficult to address except by way of damages actions after the fact"—those involving "individual instances of discrimination or law enforcement overreach." *Ziglar*, 137 S. Ct. at 1862. The Ninth Circuit has interpreted this distinction to mean that *Bivens* is available where "[t]he standards governing [defendant's] conduct are the same . . . as they would be in any other excessive force case." *Rodriguez*, 899 F.3d at 745.

In *Moneyham v. United States*, where a prisoner brought an Eighth Amendment excessive force claim against government employees and challenged "a single instance of misconduct rather than a high level policy," the Central District Court held that *Ziglar* did "not foreclose Plaintiff from pursuing a Bivens remedy" and that "Plaintiff should . . . be permitted to proceed with his excessive force claims[.]" *Moneyham v. United States*, 2018 WL 3814586, at *5. Plaintiff Williams is also challenging a single instance of misconduct and not a high-level policy. *Moneyham* applies to the present case because in addition to the similarities of the type of excessive force used in both case (physical force used to

assault a prisoner), both cases challenge the actions of a rank-and-file officers who violated government policy prohibiting the use of excessive force.

In *Castellanos v. United States*, the Court applied the same reasoning for permitting a *Bivens* claim against a CBP Officer in a Fourth Amendment excessive force case. *Castellanos v. United States*, No. 3:18-cv-02334-JM-AGS, 2020 WL 619336, at *7 (court found that like the cases that *Ziglar* distinguished, *Castellanos* involved standard law enforcement operations and individual instances of law enforcement overreach.) (citation omitted).

In *Jerra v. United States*, where the prisoner was attacked and injured by a federal officer, the court recognized that analysis of the special factors in *Ziglar* included a consideration of "high-level executive policy created in the wake of a major terrorist attack on American soil, [ ] the fact that a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others, [ ] that the discovery and litigation process would either border upon or directly implicate the discussion and deliberations that led to the formation of the policy in question, [ ] and that [n]ational-security policy is the prerogative of the Congress and President." *Jerra v. United States*, No. 2:12-cv-01907-ODW-AGR, 2018 WL 1605563, at *6 (citations and quotation marks omitted). The *Jerra* Court concluded that *Ziglar* did not foreclose the Plaintiff's *Bivens* remedies. *Id.*

23

As is the case with Plaintiff Williams, the plaintiff in *Jerra* was not challenging large-scale government policies—his claims involved "two individual officers, and their individual actions." *Id.* It appears that there is a general consensus among District Courts that the policies and policymakers factor considered in *Ziglar* was unique to cases where plaintiffs challenge more than single instances of individual officer misconduct. Thus, the instant case is not about policies or policymakers.

2. Extending *Bivens* does not implicate national security.

There were national security concerns in *Ziglar* because plaintiffs challenged the government's response to the September 11 attacks. That was a special factor because "National-security policy is the prerogative of the Congress and President," not judges. *Ziglar*, 137 S. Ct. at 1861; *see also Rodriguez*, 899 F.3d at 745. It will not harm national security to hold Defendant Baker civilly liable for using excessive force to permanently injure Plaintiff Williams. Therefore, national security is not a special factor in the instant case.

3. Extending *Bivens* would not have problematic foreign policy implications.

Extending *Bivens* in the instant case would implicate American foreign policy because the incident took place in the United States and no other county or non-citizens were involved. *See Castellanos v. United States*, 2020 WL 619336, at

24

\*7 (concluding that "[e]xtending *Bivens* here would also not implicate foreign policy because the incident involved American citizens on American soil.")

Conclusion

For the above reasons, the Court should withdraw its order that attempts to re-screen the Plaintiff's Complaint in light of *Ziglar*. Should the Court choose to evaluate this issue even though Defendant has already waived it, nothing in the *Ziglar* analysis counsels against allowing Plaintiff's *Bivens* action to proceed. The Court should allow this case to proceed to trial.

Respectfully submitted,

Dated: May 11, 2020          By:   */S/ Carter C. White*

Carter C. White
King Hall Civil Rights Clinic

Anna Davytan
Laura Kurtz
Certified Law Students

*Counsel for Plaintiff, Shannon Williams*